UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ELMER L. JEFFERSON,                    )
                                       )
            Petitioner,                )
                                       )
      vs.                              )          Case No. 4:13CV542 ACL
                                       )
ELLIS McSWAIN, JR.,[1]                 )
                                       )
            Respondents.               )

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Elmer L. Jefferson for a Writ of Habeas

Corpus under 28 U.S.C. § 2254.   Also pending is Jefferson's Motion for Reconsideration of the

Court's October 19, 2015 Order denying Jefferson's Motion for Default Judgment.   (Doc. 69.)

**I.  Procedural History**

Jefferson was incarcerated at Algoa Correctional Center in Jefferson City, Missouri, when

he filed his Petition.   Jefferson was paroled on June 4, 2013.   (Doc. 26 at 1.)   Because Jefferson

remains under the supervision of the Missouri Board of Probation and Parole, his petition for writ

of habeas corpus is not moot.   *See Sibron v. New York*, 392 U.S. 40, 50-58 (1968).

On April 23, 2010, a jury found Jefferson guilty of two counts of sale of a controlled

substance and resisting arrest.   (Respt's Ex. J at 196-197.)   The offenses were charged in three

separate cases that were consolidated for trial and sentencing.   The resisting arrest case

(07DU-CR00323-01) was for conduct that occurred on March 15, 2007, while the two drug sale

---

[1]   Jefferson named as Respondent Scott Lawrence, Warden of the Algoa Correctional Center.
Because Jefferson was released on parole after he filed his Petition, the proper respondent is "the
particular…parole official in charge of the parole agency."   Rule 2 of the Rules Governing § 2254
Cases in the United States District Courts (Advisory Comm. Notes).   Ellis McSwain, Jr., the
Chairman of the Missouri Board of Probation and Parole, is the proper Respondent in this matter.
The Court will, therefore, substitute Ellis McSwain, Jr. as Respondent.

cases (07DU-CR00320-01 and 07DU-CR1687-01) were for conduct that occurred on May 17, 2007. *See* Appendix to Respt's Ex. A at A-5 thru A-10. Jefferson was sentenced to prison terms of 12 years on each of the drug sale charges to run concurrent to each other and a 4-year consecutive sentence for the resisting arrest charge, for a total of 16 years imprisonment. *Id.*

Jefferson raised two points on direct appeal of his convictions. In his first point, Jefferson argued that the trial court abused its discretion in overruling Jefferson's objection to Officer Yates' testimony that the person who was on the videotapes selling drugs to the confidential informant was Jefferson. (Respt's Ex. A at 10.) In his second point on appeal, Jefferson argued that the trial court erred in trying Jefferson *in absentia*, in violation of his rights to due process of law, to a fair trial, to confront the witnesses against him, to present a defense, and to testify. *Id.* at 12. On May 12, 2011, the Missouri Court of Appeals affirmed Jefferson's convictions. (Respt's Ex. B.)

Jefferson prematurely filed his motion for post-conviction relief under Rule 29.15. (Respt's Ex. D.) After the appointment of counsel, Jefferson filed an amended post-conviction relief motion and request for an evidentiary hearing. (Respt's Ex. E.) In the amended motion, Jefferson argued that he received ineffective assistance of appellate counsel when counsel failed to raise on direct appeal the claim that the trial court abused its discretion in not appointing substitute counsel after Jefferson expressed good cause or "justifiable dissatisfaction" with his appointed attorney. (Respt's Ex. E.) The motion court summarily entered judgment on behalf of Respondent without holding an evidentiary hearing. (Respt's Ex. F.)

Jefferson timely filed the instant Petition on March 1, 2013. (Doc. 1.) Jefferson raises four grounds for relief, as follows: (1) the judgment and sentence is unconstitutional because the Dunklin County Sheriff's Department caused him to fail to appear in court resulting in a warrant for his arrest; (2) he received ineffective assistance of counsel because his counsel abandoned the issue of the warrant and detainer issued for failure to appear; (3) the sentencing court was without

jurisdiction because Jefferson filed a 180 day writ on June 8, 2007 and the State failed to prosecute within that time, the warrant for failure to appear was the fault of the Sheriff's Department and was withdrawn on December 15, 2007, and Jefferson was denied a speedy trial; and (4) he received ineffective assistance of appellate counsel when counsel failed to raise on direct appeal the claim that the trial court abused its discretion in not appointing Jefferson substitute trial counsel. *Id.* The only ground for relief that was previously raised by Jefferson is the fourth ground; the first three grounds for relief were not previously raised for consideration in any Missouri court.

On July 10, 2013, Respondent filed a Response to Order to Show Cause, in which he argues that the Court should dismiss the Petition because all grounds are procedurally defaulted and fail on their merits. (Doc. 26.) Jefferson has filed several supplemental pleadings in which he provides further argument and documents in support of his claims. (Docs. 9, 21, 28, 29, 32.)

## II. Facts

The factual summary below is taken directly from the Missouri Court of Appeals' decision (Respt's Ex. B at 3-8) and relays facts that are relevant to Jefferson's fourth ground for relief:

On April 23, 2010, during the pre-trial conference, [Jefferson] continually disrupted the proceeding. The trial court repeatedly told [Jefferson] he had to wait his turn to speak. After the prosecutor and [Jefferson]'s counsel finished presenting their motions to the court, the trial court permitted [Jefferson] to present additional matters and submit written documents with respect to those matters. After the trial court listened to [Jefferson] and received [Jefferson]'s written documents, the trial court overruled [Jefferson]'s claims of "double jeopardy, the conflicts of interest, and the jurisdiction." The trial court stated: "I think the case can proceed properly here today and we're gonna proceed with the case here today." The trial court's ruling led to a tirade

by [Jefferson].[2]

Initially, the trial court repeatedly told [Jefferson] to stop as he continued to assert the proceeding was illegal and he was prejudiced by ineffective assistance of counsel. Then, the trial court warned:

> The Court: Okay. It's my job as the judge to make sure you get a fair trial here today based on the evidence that's presented.
>
> [Jefferson]: Um-hum.
>
> The Court: And that's what I want to do. We have to make sure that justice is done and that's my job here today. The reason I wanted to take this up in pre-trial is so that you understand, Mr. Jefferson, that when we're out there in front of that jury I'm not going to allow any outbursts by you. If you want to discuss something with your attorney, obviously, you have that right. But I want to make sure that you understand that no outbursts, no talking out loud, none of that's gonna be allowed in front of that jury.
>
> [Jefferson]: Actual prejudice.
>
> The Court: There's not gonna be any, any mistrials with regard to that.
>
> [Jefferson]: That's prejudice.
>
> The Court: Mr. Jefferson, Mr. Jefferson, --
>
> [Jefferson]: That is prejudice, I'm not gonna, --
>
> The Court: Well, --
>
> [Jefferson]: You're not gonna force me into a court proceeding.
>
> The Court: If you –
>
> [Jefferson]: That's actual prejudice.
>
> The Court: If you continue I will have you removed from the courtroom, if you have an outburst in front of the jury.

[Jefferson] continued to argue over the judge's instructions to stop. The trial court then asked

[Jefferson]: "Do you want to be present in that courtroom today whenever we have this jury trial

---

[2] [Jefferson]'s tirade constituted ten pages of the twenty-five pages in the pre-trial conference transcript.

because" - to which [Jefferson] interrupted and responded, "You cannot make me - -[.]"   When

the trial court again warned [Jefferson] he would be removed from the courtroom, [Jefferson]

responded the court could not do that and he was entitled to effective assistance of counsel.   The

trial court again warned [Jefferson]:

> The Court:      Mr. Jefferson, I've warned you once already.
>
> [Jefferson]:    No way.
>
> Bailiff:         Do not threaten the judge.
>
> [Jefferson]:    I'm not threatenin' it, I'm just lettin' you know.   I'm under the
> authority of the United States and you [sic] not gonna sit up here and deny me my Constitutional
> Rights, no way.

> The Court:      I'm gonna warn you a second –
>
> [Jefferson]:    No way.
>
> The Court:      -- time.
>
> [Jefferson]:    No way.   No.
>
> The Court:      If you have any more outbursts –
>
> [Jefferson]:    Your Honor, I got a right to stand up for my rights.
>
> The Court:      At this time, would you please, Mr. Jefferson, --
>
> [Jefferson]:    File my papers and you do what you want to do.
>
> Bailiff:         Mr. Jefferson.
>
> [Jefferson]:    Just file my papers.   I ain't got time to listen to you.   File my
> papers.

> The Court:      Mr. Jefferson, I'm gonna order –
>
> [Jefferson]:    I don't have an attorney.
>
> The Court:      I'm gonna order you removed from the proceeding –
>
> [Jefferson]:    File my papers.

The Court:      We're gonna proceed with the jury trial today.

[Jefferson]:      No.   You ain't gonna have no trial without me.

The Court:      Yes, we are.

[Jefferson]:      Well, go ahead then.   I'm not in it, that's not my attorney.

The Court:      This is your attorney.

[Jefferson]:      No.

The Court:      She'll be present.

[Jefferson] continued to argue with the Court regarding his request that the papers he filed be

returned until defense counsel, Rebecca Burke, interjected and asked [Jefferson]:

Ms. Burke:      I would like for you to be present in the courtroom during the trial.
Will you remain in the courtroom?

[Jefferson]:      I'm entitle [sic] to effective against, assistance of counsel.   I'm
callin' the court actual prejudice and there is no way you [sic] gonna sit up here and
overstep me from my Constitutional rights when I'm tellin' you I'm not satisfied with my
attorney and you sittin' up there with those lawsuits in your hand, you cannot do it.   You
cannot sit over a proceeding like that.   So, --

The Court:      Are you asking –

[Jefferson]:      I said, that's not my attorney.   She's not representin' me properly
and you are actual prejudice and you can't make, you're not gonna push all my rights in the
gutter.

The Court:      Mr. Brumley is gonna escort –

[Jefferson]:      I don't care about Mr. Brumley or nobody else.   You don't sit up
and control my life like that.   When you're wrong, you're wrong.   I'm not –

Don't touch me.

Bailiff:      This is what I'm gonna do, --

[Jefferson]:      You ain't gonna do nothin'.   Let's go.

Bailiff:      You're gonna stop fightin' –

[Jefferson]:      Do it, do it.

Bailiff:        -- or I'll do what I got to do –

[Jefferson]:        I don't need to fight you.

And I'm gonna tell you somethin', I will walk anywhere I'm not afraid, you understand me.

Bailiff:        You come out of here, now.

[Jefferson]:        You don't stand and tell me to come out of nothin' when I'm tellin' you I'm standin' for my rights.

Prosecutor:        Go get the Sheriff.

The outburst continued until [Jefferson] was escorted from the room. Following an

off-the-record conference, the trial court stated:

The Court:        We'll go back on the record. We're back on the record in the case of State of Missouri verses [sic] Elmer Jefferson. I just want to make the record clear that due to Mr. Jefferson's unwillingness to follow the court instructions, having been given multiple warnings here during pre-trial that outbursts were not going to be allowed, that the Court has ordered him removed from the courtroom at this time and we will proceed with trial today without Mr. Jefferson.

After a short recess, [Jefferson]'s counsel orally requested a continuance "to see if

[Jefferson] would participate" on another day. The trial court overruled [Jefferson]'s request for a

continuance. No other request for relief was presented to the trial court. [Jefferson] was

removed from the pre-trial conference sometime before 10:10 a.m.; jury selection, trial, jury

deliberations, and the jury's verdicts were all completed by 3:30 p.m. that same day.

The trial court told the jurors [Jefferson] was not present in the courtroom because he "has

chosen . . . not to be here today . . ."

### III.   Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. §

2254(d), which provides:

(d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed Section 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000).   With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405.   Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410.   Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

## IV.   Procedural Default

To avoid defaulting on a claim, a petitioner seeking federal habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a

fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020–21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) and *Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997)). Specifically, a state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas review of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Wemark*, 322 F.3d at 1021 (internal quotation marks omitted) (quoting *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996)). Claims that are not fairly presented to the state courts are procedurally defaulted. *See id.* at 1022.

Missouri requires the raising of constitutional claims at the first available opportunity. *See In re J.M.N.*, 134 S.W.3d 58, 73 (Mo. Ct. App. 2004); *In re T.E.*, 35 S.W.3d 497, 504 (Mo. Ct. App. 2001). Alleged trial errors, including constitutional claims of trial error, must be raised on direct appeal; for "[p]ost-conviction motions cannot be used as a substitute for direct appeal or to obtain a second appellate review." *State v. Clark*, 859 S.W.2d 782, 789 (Mo. Ct. App. 1993*); accord Amrine v. State*, 785 S.W.2d 531, 536 (Mo. 1990) (en banc).

Absent a showing of cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claim in state court. *Sawyer v. Whitley*, 505 U.S. 333, 338–39 (1992). "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,]…' impeded [his] efforts to comply with the State's procedural rule." *Maples v. Thomas*, 132 S.Ct. 912, 922 (2012) (alternations in original) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

Respondent argues that Jefferson has procedurally defaulted all of his grounds for relief. As cause for his procedural default with respect to all of his claims, Jefferson states that there "exists a conflict of interest due to the fact that all law enforcement officials are defendants in [a] civil action in federal court." (Doc. 1 at 5, 7, 8, 9.) Jefferson also claims that he was abandoned by counsel as cause for his procedural default of Grounds One, Two, and Three. *Id.* at 5, 7, 8. In his response to Respondent's Response to Order to Show Cause, Jefferson states that his procedural default was caused by ineffective assistance of trial counsel and post-conviction counsel. (Doc. 29 at 1-2.)

Jefferson's claim that a conflict of interest exists due to the fact that he filed complaints against law enforcement personnel is irrelevant to his failure to raise his grounds for relief in his direct appeal or post-conviction proceedings. This does not provide cause to excuse his procedural default.

Jefferson next alleges that his trial and post-conviction counsel abandoned issues that should have been argued below. The ineffectiveness of trial or direct appeal counsel can be used as cause to excuse a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488-89. The doctrine of exhaustion, however, requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. *Id.*

With regard to Jefferson's claim that post-conviction counsel abandoned issues, negligence of post-conviction counsel cannot provide cause to overcome a procedural default because there is no constitutional right to an attorney in state post-conviction proceedings. *Coleman*, 501 U.S. at 752. More recently, the Supreme Court found that, under very limited

circumstances, the conduct of post-conviction counsel may constitute "cause" for a procedural default. *See Maples*, 132 S.Ct. at 922; *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).

In *Maples*, the abandonment of a petitioner by his post-conviction counsel, without notice to the petitioner, and resulting in the petitioner's failure to file a timely appeal in the post-conviction proceeding, constituted cause for that failure. 132 S.Ct. at 922-24. This decision does not aid Jefferson here because there is no indication of record that Jefferson's post-conviction counsel engaged in conduct that may be considered the abandonment of Jefferson. To the contrary, Jefferson's post-conviction counsel filed an amended post-conviction motion setting forth an ineffective assistance of appellate counsel claim and a request for an evidentiary hearing.

The Court will now examine Jefferson's grounds for relief individually to determine whether Jefferson has alleged sufficient cause to excuse his procedural default.

### a.    Ground One

In Ground One, Jefferson claims that the Dunklin County Sheriff's Department caused him to fail to appear in court, resulting in a warrant for his arrest. Respondent contends that Jefferson defaulted Ground One by failing to raise this claim in state court.

Ground One alleges trial error and, as such, should have been raised in Jefferson's direct appeal. The ineffective assistance of trial or direct appeal counsel cannot serve as cause to excuse the default, because such ineffectiveness was not raised in the state post-conviction proceedings. *See Murray*, 477 U.S. at 488-89. Thus, Ground One is procedurally defaulted.

### b.     Ground Two

In Ground Two, Jefferson argues that he received ineffective assistance of counsel because trial counsel abandoned the issue of the warrant and detainer issued for failure to appear. Respondent contends that Jefferson defaulted this claim by failing to present it in state court.

Jefferson's claim should have been raised in his post-conviction relief motion. Jefferson argues that his default was caused by ineffective assistance of post-conviction counsel. Because Ground Two alleges an ineffective assistance of trial counsel claim, the Court will discuss whether Jefferson's default can be excused under *Martinez*.

"Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 132 S.Ct. at 1315. "For ineffective assistance of post-conviction counsel to constitute cause, petitioner must show that counsel's assistance was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), and further demonstrate that the underlying claim of ineffective assistance of trial counsel is a 'substantial' one, that is, that the claim has some merit." *Moore v. Larkins*, 2013 WL 4091652, at * 5 (E.D. Mo. Aug. 13, 2013) (citing *Martinez*, 132 S.Ct. at 1318).

To establish an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test set forth in *Strickland*.   A habeas petitioner must show his counsel's performance fell below professional standards and that his defense suffered prejudice as a result.   *See Strickland*, 466 U.S. at 694.   In evaluating the performance prong of the *Strickland* test, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances."   *Id.* at 688.   Rather than second-guessing counsel's actions with the benefit of hindsight, the reviewing court must examine counsel's conduct with a high degree of deference.

*Id.* at 689.   Counsel's performance was prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995) (quoting *Strickland*, 466 U.S. at 694).

Jefferson argues that trial counsel abandoned the issue of the warrant and detainer issued for failure to appear.   Jefferson contends that he was in custody at the time the warrant was issued.   As factual support for this argument, Jefferson indicates that defense counsel Rebecca Burke filed a Motion to Withdraw on January 23, 2008, and the Motion was granted on January 30, 2008.   (Doc. 1 at 6.)   Jefferson has failed to allege facts demonstrating that counsel's performance was deficient.   The state court docket sheet confirms that Ms. Burke, an attorney with the Public Defender's office, filed a Motion to Withdraw on January 23, 2008, which was granted on January 30, 2008.   (Respt's Ex. H at 6; Respt's Ex. I at 6.)   The docket entry also indicates that Jefferson had no objection to the Motion and that Jefferson would obtain private counsel.   *Id.*   Ultimately, when Jefferson failed to hire private counsel, Ms. Burke was reappointed to represent him at trial over Jefferson's objection.   *Id*.   Ms. Burke filed a second Motion to Withdraw prior to trial, which was also denied.   (Respt's Ex. G at 5; Respt's Ex. H at 5; Respt's Ex. I at 5.)   The fact that Ms. Burke filed a Motion to Withdraw is immaterial to Jefferson's claim that she failed to object to the issuance of a warrant for failure to appear. There is no evidence that Ms. Burke had any involvement in the issuance of such warrant. Further, Jefferson does not allege that his trial would have been different had his attorney objected to the issuance of the warrant or detainer.   Thus, Jefferson failed to demonstrate his post-conviction counsel failed to raise a substantial claim of ineffective assistance of trial counsel.   Jefferson is, therefore, unable to establish "cause" for his procedural default of Ground Two.

### c.     Ground Three

In Ground Three, Jefferson argues that his right to a speedy trial was violated. Respondent argues that Jefferson defaulted this claim by failing to raise it in state court.

Jefferson's claim should have been raised on direct appeal, and the failure to do so constituted a procedural default. The ineffective assistance of trial or direct appeal counsel cannot serve as cause to excuse the default, because such ineffectiveness was not raised in the state post-conviction proceedings. *See Murray*, 477 U.S. at 488-89.

### c.     Ground Four

In Ground Four, Jefferson argues that direct appeal counsel was ineffective in failing to raise the claim that the trial court abused its discretion in not appointing Jefferson substitute trial counsel. Respondent argues that Jefferson defaulted Ground Four because he failed to "fairly present" this claim in his state post-conviction proceeding.

In considering Jefferson's motion attacking his conviction under Rule 29.15, the reviewing judge indicated that Jefferson asserted "that he was denied [t]he right to effective assistance of counsel in that his appointed appellate counsel was ineffective for failing to raise, on direct appeal, trial court error in its failure to appoint substitute counsel to represent [him]." (Respt's Ex. F at 2.)   The Dunklin County Circuit Court found that:

 [Jefferson]'s petition is replete with allegations that [Jefferson] complained to the trial court that there was a "conflict of interest" between himself and his trial counsel; that he complained about miscommunication between himself and his trial counsel; that his trial counsel had been role playing to hide professional conduct; and, that he did not want his trial counsel to represent him at trial.   However, these are conclusions, not facts.   Further, Movant fails to allege anywhere in his petition how the results of his trial would have been any different with another attorney.   There is no allegation of prejudice.   If the outcome of [Jefferson]'s trial was not prejudiced by the conduct of his trial attorney, there can be no ineffective assistance by appellate counsel in failing, on appeal, to raise the issue of the trial court's failure or refusal

to replace trial counsel.

*Id*. at 3.   Ultimately, the Dunklin County Circuit Court held:

> that the petition as filed is insufficient as a matter of law and that judgment may be summarily entered on behalf of Respondent.

*Id*.   Based on this record, Jefferson did not sufficiently preserve the issue raised in ground four for federal habeas review.

Jefferson cannot allege ineffective assistance of post-conviction counsel to excuse his default because the Eighth Circuit has rejected the argument that an error by post-conviction relief counsel served as cause to excuse a procedurally defaulted claim of ineffective appellate counsel.  *See Dansby v. Hobbs*, 766 F.3d 809, 833 (8th Cir. 2014) ("We…decline to extend *Martinez* to claims alleging ineffective assistance of counsel on direct appeal.").

Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must make a showing of actual innocence based on "new reliable evidence that he was innocent of the crime of which he was convicted."   *Storey v. Roper*, 603 F.3d 507, 524 (8th Cir. 2010). Jefferson has made no such showing of actual innocence.   Accordingly, Jefferson's claims remain procedurally defaulted.

## V.   Jefferson's Claims

The undersigned has already determined that Jefferson's claims are procedurally defaulted.   Jefferson's claims also fail on their merits.

## 1.      Ground One

Jefferson argues in his first ground for relief that his sentence and judgment is unconstitutional because the Dunklin County Sheriff's Department caused him to fail to appear in court resulting in a warrant for his arrest.   Jefferson offers no facts or legal authority to support that a failure to appear warrant that allegedly caused him to miss a court appearance

caused him to be convicted. The fact that a warrant was issued for his arrest does not demonstrate that the sentence or judgment is unconstitutional. Jefferson has failed to show that a decision of the state courts was contrary to or an unreasonable application of clearly established Federal law.

Accordingly, Ground One will be denied.

**2.      Ground Two**

In his second ground for relief, Jefferson argues that trial counsel was ineffective because she abandoned the issue of the warrant and detainer issued for failure to appear. The Court has already determined in the above procedural default analysis that Ground Two lacks merit because Jefferson failed to satisfy either prong of the *Strickland* analysis. Accordingly, Ground Two will be denied.

**3.      Ground Three**

In his third ground for relief, Jefferson argues that the sentencing court was without jurisdiction because he filed a 180 day writ and the State failed to prosecute within that time; the warrant for failure to appear was the fault of the Sheriff's Department; and Jefferson was denied a speedy trial. The docket sheets for the underlying cases that were provided by the Respondent cover the events in Jefferson's cases after they were bound over. Said docket sheets do not reflect the issuance of a failure to appear warrant for Jefferson. Neither party has presented any evidence related to the alleged failure to appear warrant. The undersigned concludes that the failure to appear warrant must have been issued prior to Jefferson's cases being bound over. The offense conduct for the drug sale offenses occurred on March 15, 2007 while the resisting arrest offense conduct occurred on May 17, 2007. On January 30, 2008, Jefferson waived his right to a speedy trial in two of the cases three cases.

The Uniform Mandatory Disposition of Detainers Law, Mo.Rev.Stat. § 217.460 ("UMDDL") "provides that a person confined to the MDOC who has a detainer pending against him may file a written request to dispose of that detainer." *Moore v. Steele*, 4:12CV1174CDP, 2013 WL 3092186, at * 2 (E.D. Mo. June 18, 2013) (citing Mo.Rev.Stat. § 217.450(1)). "If that request complies with certain procedural requirements, the untried charges listed in the detainer must be brought to trial within 180 days (or longer for good cause) or the court loses jurisdiction over those charges." *Moore*, 2013 WL 3092186, at * 2.

"A violation of Missouri's speedy trial law, without more, is not cognizable in habeas and does not justify relief under § 2254." *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994). *See Crenshaw v. Larkins*, 4:09CV336 JCH, 2012 WL 886823, at * 2 (E.D. Mo. Mar. 15, 2012). The Eighth Circuit has held that "[t]he question of whether the Missouri courts had jurisdiction to sentence [the petitioner] was one solely of state law and is therefore not properly before this court." *Poe*, 39 F.3d at 207; *Moore*, 2013 WL 3092186, at * 4 ("The Eighth Circuit has characterized Missouri's UMDDL as a 'state speedy trial law,'…and a claim that it has been violated may only be addressed by Missouri courts.") (citation omitted); *Crenshaw*, 2012 WL 886823, at * 2 (" a [speedy trial] claim is based only on Missouri law and actions of Missouri officials, and it may be addressed only by Missouri courts"). Because there is no federal habeas relief available for Jefferson's UMDDL claim, the Court will deny this claim.

**4.     Ground Four**

In his fourth ground for relief, Jefferson argues that he received ineffective assistance of appellate counsel because counsel failed to raise on direct appeal the claim that the trial court abused its discretion in not appointing substitute counsel for Jefferson.

Jefferson alleges the following facts in support of this claim:  (1) the court deposed appellate counsel and the record was concealed; (2) trial counsel filed a motion to withdraw,

which was granted; however, she forced Jefferson into unwanted representation; (3) trial counsel was sued by Jefferson; and (4) trial counsel stated in open court that she was not going to protect Jefferson's constitutional rights.

The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that set forth in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Jefferson must show that appellate attorney's performance was below the reasonable standard of competence and that there is a reasonable probability that the result would have been different absent this deficient performance. *See Strickland*, 466 U.S. at 687; *Gee v. Groose*, 110 F.3d 1346, 1352 (8th Cir. 1997). With respect to the performance element, appellate counsel is expected to winnow the issues on appeal to highlight the most meritorious issues and eliminate the sure losers. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *Gee,* 110 F.3d at 1352. An attorney's decision not to raise an unwinnable issue on appeal is an important strategic decision in competent appellate advocacy, and does not constitute ineffective assistance of appellate counsel. *Horne v. Trickey*, 895 F.2d 497, 500 (8th Cir. 1990). For the prejudice element of his ineffective assistance of appellate counsel claim, Jefferson "must show a reasonable probability that, but for his counsel's unreasonable [conduct], he would have prevailed on his appeal." *Smith*, 528 U.S. at 285.

The Sixth Amendment does not guarantee the right to a "meaningful relationship between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Further, "[a]ppointment of new counsel is warranted only when the defendant demonstrates justifiable dissatisfaction with his appointed attorney." *United States v. Baisden*, 713 F.3d 450, 454 (8th Cir. 2013). "The focus of the justifiable dissatisfaction inquiry is the adequacy of counsel in the adversarial process, not the accused's relationship with his attorney." *Id.* (quoting *United States v. Barrow*, 287 F.3d 733, 738 (8th Cir. 2002)). "Justifiable dissatisfaction includes an

irreconcilable conflict or a complete breakdown in communication." *Baisden*, 713 F.3d at 454. Importantly, "it does not include a defendant's frustration with counsel who does not share defendant's tactical opinions but continues to provide zealous representation." *Id.* "Thus, a defendant has no right to an attorney who will docilely do as she is told…" *Id.*

The trial transcript reveals that, immediately prior to trial, the trial court allowed Jefferson to present additional matters and file documents. (Respt's Ex. J at 13.) Among other claims, Jefferson stated that he had not "had effective assistance of counsel." *Id.* at 17, 19. When the trial court denied Jefferson's various motions, Jefferson started a tirade which resulted in his removal from the courtroom during trial. With regard to trial counsel, Jefferson stated "I don't want her, I got a lawsuit against her. She cannot represent me." *Id.* at 21. The trial court stated, "I believe you're incorrect…We're gonna go forward." *Id.* at 22. After Jefferson's removal, counsel requested a continuance to determine if Jefferson would participate in the trial on a different day. (Respt's Ex. J at 31.) The trial court overruled counsel's request for a continuance. *Id.* Counsel proceeded to represent Jefferson throughout the trial in his absence.

Jefferson is unable to satisfy either prong of the *Strickland* analysis. None of the facts alleged by Jefferson in support of his claim demonstrates that the trial court abused its discretion in not appointing Jefferson substitute trial counsel. Jefferson's claim that trial counsel stated in open court she was not going to protect his constitutional rights is not supported by the record. The trial court reasonably found that Jefferson had not established cause to appoint substitute counsel. Although Jefferson may have been dissatisfied with counsel, he did not demonstrate justifiable dissatisfaction. The record reveals that counsel continued to advocate for Jefferson after he was removed from the courtroom for his disruptive behavior. Appellate counsel's decision not to raise this argument, therefore, does not constitute ineffective assistance of appellate counsel. Additionally, Jefferson cannot

demonstrate prejudice because he is unable to show a reasonable probability that, but for his counsel's unreasonable conduct, he would have prevailed on his appeal.

Accordingly, Ground Four will be denied.

## VI.  Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right.  *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999).   A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.  *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).   In this case, Jefferson has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## VII.  Jefferson's Motion for Reconsideration

Also pending is Jefferson's Motion for Reconsideration of the Court's October 19, 2015 Order denying Jefferson's Motion for Default Judgment.  (Doc. 69.)   The Court denied this Motion as frivolous.   The Court declines to reconsider this determination and will deny Jefferson's Motion for Reconsideration.


## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

**IT IS FINALLY ORDERED** that Petitioner's Motion for Reconsideration (Doc. 69) is **denied**.

Dated:   January 14, 2016

ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE